UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
TANIA BEAUVAIS,

       Plaintiff,

 -v.-

P.F. CHANG'S CHINA BISTRO, INC.

       Defendants.
------------------------------------------------------------------------X

**COMPLAINT**

Case No. 17-7724

## COMPLAINT

NOW COMES Plaintiff, TANIA BEAUVAIS, by her attorneys, Eisenberg & Baum, LLP, and as and for her Complaint, alleges as follows:

### THE PARTIES

1. Plaintiff TANIA BEAUVAIS is an individual residing in Rockland County, New York.

2. Defendant P.F. CHANG'S CHINA BISTRO, INC. ("P. F. CHANG") is a foreign business corporation formed in Delaware and duly registered to do business, and doing business actively, in the State of New York and having a principle place of business in New York located at 125 Fashion Drive, Nanuet, NY 10954. Its corporate headquarters are located at 7676 E. Pinnacle Peak Road, Scottsdale, AZ.

### JURISDICTION AND VENUE

3. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 in that this action for racial and sexual harassment and racial and gender discrimination and retaliation arise under federal law, Title VII of the Civil Rights Act of 1964. 42 U.S.C. §2000e-5 *et seq*. ("Title VII"). The court has supplemental jurisdiction over plaintiff's

state- and common-law claims under 28 U.S.C. §1367 and principles of pendent and/or ancillary jurisdiction.

4. This court has *in personam* jurisdiction over the defendants because they are located in, conduct operations within, transact business in and provide services within the State of New York, and their principal place of business is located in Rockland County, New York.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND

6. P. F. Chang operates a network of upscale Westernized Chinese food restaurants across the United States (indeed, the spelling of the founder's name was Westernized from "Chiang" to "Chang" according to the company's website).

7. Plaintiff is African American, and started working for P. F. Chang at its restaurant in Nanuet, New York in or about August 2014.

8. Plaintiff began her employment in the position of Hostess. About one year later, she assumed the position of Server.

9. Towards the end of 2015, other employees of P. F. Chang began calling Plaintiff "nigger" or "nigga" and using that term towards her regularly during work hours.

10. For instance, an Asian co-worker named "Marvin" (last name unknown) used those terms regularly at work. A Caucasian co-worker named "Connor" (last name unknown), also used the terms.

11. In approximately October 2016, Plaintiff complained to her manager "Jose" (last name unknown) about the use of these terms in the workplace. Hearing these terms was offensive and hostile since it expressed racial animus, derogation and discrimination. Plaintiff asked that her manager, Jose, counsel the employees not to use this term.

12. P. F. Chang either took no action or acted without effect and the use of the terms "nigger" and "nigga" did not stop.

13. For example, on April 2, 2017, Marvin said, "what the fuck, nigga … it's coming" regarding a food order that Plaintiff inquired about. Jose was present when Marvin made this comment but he did not say anything to Marvin.

14. The use of "nigga" and "nigger" in reference to Plaintiff continues to this day even though Plaintiff has complained repeatedly about it.

15. In addition, beginning in the summer of 2016, co-workers made many comments of a sexual nature to Plaintiff. These included, but were not limited to, the following statements:

    a. "I imagine you naked";

    b. "I want one night with you";

    c. "I want to pull your hair";

    d. "reach [down] again so I can see that";

    e. "send nudes" spelled out in rice grains on a counter.

16. Management knew and/or should have known about these comments and knew and/or should have known that the comments were offensive unwelcome and offensive. Management did not do anything to stop this hostile work environment and it continues to this day.

17. On May 16, 2017, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission. On July 26, 2017, Plaintiff was mailed a Right to Sue letter by the EEOC.

18. As retaliation for complaining about the harassment and discrimination, Plaintiff was retaliated against.

19. In June 2017, Marvin continued to call Plaintiff "nigger" and/or "nigga" and refused to provide Plaintiff with dressing and condiments she requested for her customers.

20. In or around July 2017, Connor (bartender) would scream and curse at Plaintiff when she requested drinks from him for her customers.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Racial Harassment and Hostile Workplace)**

21. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in paragraphs numbered "1" through "20" as if set forth more fully and at length herein.

22. Title VII and Section 296.1(a) of the New York Human Rights Law, N.Y. Exec. Law § 290 *et seq*. ("Section 296.1(a)"), prohibit racial harassment in the workplace

23. Plaintiff deserved to retain her employment and did not do anything to merit discharge or discipline and/or to be subject to this discriminatory conduct. Nevertheless, Defendants denied Plaintiff the benefits of employment, including all favorable conditions and emoluments thereof and created and allowed to exist a hostile, intolerable workplace imposed upon her by the conduct of its employees and managers, of which it was well aware and without any non-discriminatory basis therefor.

24. Defendants' actions were taken under circumstances giving rise to an inference of discrimination. The corporate defendants aided and abetted their employees in carrying out discriminatory actions against Plaintiff which created an intolerable work environment based on racial harassment and, acting with executive authority in their official capacities, took actions in regard to Plaintiff that violated Title VII and Section 296.1(a).

25. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future

wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Race Discrimination)

26. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in paragraphs numbered "1" through "25" as if set forth more fully and at length herein.

27. Title VII and Section 296.1(a) prohibit discrimination in employment based upon race.

28. Plaintiff was treated differently than workers who were not African-American, since they were not subjected to unwanted racial communication.

29. Plaintiff deserved to retain her employment and did not do anything to merit discharge or discipline and/or to be subject to this discriminatory conduct. Nevertheless, Defendants denied Plaintiff the benefits of employment, including all favorable conditions and emoluments thereof by discharging her because of hostility to Plaintiff based on her race and without any non-discriminatory basis thereof.

30. Defendants' actions were taken under circumstances giving rise to an inference of discrimination. The corporate defendants aided and abetted their employees in carrying out discriminatory actions against Plaintiff based upon her gender and, acting with executive authority in their official capacities, took actions in regard to Plaintiff that violated Title VII and Section 296.1(a).

31. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Sexual Harassment and Hostile Workplace)**

32. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in paragraphs numbered "1" through "31" as if set forth more fully and at length herein.

33. Title VII and Section 296.1(a) of the New York Human Rights Law, N.Y. Exec. Law § 290 *et seq*. ("Section 296.1(a)"), prohibit sexual harassment in the workplace

34. Plaintiff deserved to retain her employment and did not do anything to merit discharge or discipline and/or to be subject to this discriminatory conduct. Nevertheless, Defendants denied Plaintiff the benefits of employment, including all favorable conditions and emoluments thereof and created and allowed to exist a hostile, intolerable workplace imposed upon her by the conduct of its employees and managers, of which it was well aware and without any non-discriminatory basis therefor.

35. Defendants' actions were taken under circumstances giving rise to an inference of discrimination. The corporate defendants aided and abetted their employees in carrying out discriminatory actions against Plaintiff which created an intolerable work environment based on sexual harassment and, acting with executive authority in their official capacities, took actions in regard to Plaintiff that violated Title VII and Section 296.1(a).

36. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

## AS AND FOR A FOURTH CAUSE OF ACTION
**(Gender Discrimination)**

37. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in paragraphs numbered "1" through "36" as if set forth more fully and at length herein.

38. Title VII and Section 296.1(a) prohibit discrimination in employment based upon gender.

39. Plaintiff was treated differently than male workers, who were not subjected to unwanted sexual touching and communication.

40. Plaintiff deserved to retain her employment and did not do anything to merit discharge or discipline and/or to be subject to this discriminatory conduct. Nevertheless, Defendants denied Plaintiff the benefits of employment, including all favorable conditions and emoluments thereof by discharging her because of hostility to Plaintiff based on her gender and without any non-discriminatory basis thereof.

41. Defendants' actions were taken under circumstances giving rise to an inference of discrimination. The corporate defendants aided and abetted their employees in carrying out discriminatory actions against Plaintiff based upon her gender and, acting with executive authority in their official capacities, took actions in regard to Plaintiff that violated Title VII and Section 296.1(a).

42. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Retaliation)

43. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in paragraphs numbered "1" through "42" as if set forth more fully and at length herein.

44. Title VII and Section 296.1(a) prohibit retaliation against an employee who seeks to assert civil rights.

45. Plaintiff made complaints to Defendants about the mistreatment based on sexual harassment and gender discrimination inflicted upon her by employees and managers of Defendants. In response, Defendants did not resolve her complaints, but rather, Plaintiff was subjected to continued and additional mistreatment, all with the knowledge and approval of Defendants for the purpose of punishing her for attempting to assert his rights.

46. Defendants' actions were taken under circumstances giving rise to an inference of discrimination. The corporate defendants aided and abetted their employees in carrying out discriminatory actions against Plaintiff which created an intolerable work environment based on sexual harassment and, acting with executive authority in their official capacities, took actions in regard to Plaintiff that violated Title VII and Section 296.1(a).

47. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court grant the following relief against the Defendants:

A. Enter a declaratory judgment, stating that Defendants' practices, policies and procedures

subjected Plaintiff to sexual and racial harassment, gender and race discrimination, and retaliation, making her work environment a hostile workplace in violation of Title VII and Section 296.1(a).

B. Enjoin Defendants from implementing or enforcing any policy, procedure, or practice that denies employees of any race, gender and/or sexuality the full and equal enjoyment of Defendants' benefits, pay increases, promotional opportunities and advancement within the company, and specifically enjoin them to take the following steps to prevent racial and sexual harassment, including but not limited to hostile work environment and gender discrimination in their workplace:

i. to develop, implement, promulgate, and comply with a policy providing for the training of each and every employee in the civil rights of employees in the workplace, including but not limited to racial, gender and sexual harassment, discrimination and retaliation;

ii. to develop, implement, promulgate, and comply with a policy providing for reporting and investigation of complaints regarding civil rights abuses, including but not limited to racial, gender and sexual harassment, discrimination and retaliation;

iii. to develop, implement, promulgate, and comply with a policy providing for disciplinary measures to be imposed upon any person found responsible for civil rights abuses, including but not limited to racial, gender and sexual harassment, discrimination and retaliation.

C. On the First Cause of Action, enter judgment against the named defendants and an award of compensatory damages for back pay, front pay, past and future employment benefits, damages for emotional distress, punitive and/or exemplary damages, attorneys' fees, pre and post-judgment interest, in an amount, in excess of the jurisdictional limits of any other court, to

be determined at trial by the jury, and further relief as this Honorable Court deems just, equitable and proper;

   D. On the Second Cause of Action enter judgment against the named defendants and an award of compensatory damages for back pay, front pay, past and future employment benefits, damages for emotional distress, punitive and/or exemplary damages, attorneys' fees, pre and post-judgment interest, in an amount, in excess of the jurisdictional limits of any other court, in an amount to be determined at trial by the jury, and further relief as this Honorable Court deems just, equitable and proper;

   E. On the Third Cause of Action enter judgment against the named defendants and an award of compensatory damages for back pay, front pay, past and future employment benefits, damages for emotional distress, punitive and/or exemplary damages, attorneys' fees, pre and post-judgment interest, in an amount, in excess of the jurisdictional limits of any other court, to be determined at trial by the jury, and further relief as this Honorable Court deems just, equitable and proper;

   F. On the Fourth Cause of Action enter judgment against the named defendants and an award of compensatory damages for back pay, front pay, past and future employment benefits, damages for emotional distress, punitive and/or exemplary damages, pre and post-judgment interest, in an amount, in excess of the jurisdictional limits of any other court, in an amount to be determined at trial by the jury, and further relief as this Honorable Court deems just, equitable and proper;

   G. On the Fifth Cause of Action enter judgment against the named defendants and an award of compensatory damages for back pay, front pay, past and future employment benefits, damages for emotional distress, punitive and/or exemplary damages, pre and post-judgment

interest, in an amount, in excess of the jurisdictional limits of any other court, in an amount to be determined at trial by the jury, and further relief as this Honorable Court deems just, equitable and proper;

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated: New York, New York
October 9, 2017

                EISENBERG & BAUM, LLP

                By: _____
                    Eric M. Baum, Esq. (EB-5493)
                    Sagar Shah, Esq.
                    Attorneys for Plaintiff Tania Beauvais
                    Office and Post Office Address
                    24 Union Square East, Fourth Floor
                    New York, NY  10003
                    (212) 353-8700